

SEAN REIS (SBN 184004)
sreis@edelson.com
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

E-filing

*Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASMINE HUBBARD and MARVEL MILLS, individually and on behalf of a class of similarly situated individuals<br><br>Plaintiffs,<br><br>v.<br><br>WENNER MEDIA LLC, a Delaware limited liability company<br><br>Defendant. | Case No.<br><br>**CV 11 4648**<br><br>CLASS ACTION COMPLAINT FOR:<br><br>**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200, CALIFORNIA FALSE ADVERTISING LAW CAL. BUS. & PROF. CODE §§ 17500, AND BREACH OF CONTRACT.**<br><br>DEMAND FOR JURY TRIAL |

## CLASS ACTION COMPLAINT

Plaintiffs Jasmine Hubbard and Marvel Mills ("Plaintiffs") bring this class action complaint against Defendant Wenner Media LLC ("Wenner" or "Defendant"), to stop Defendant's practice of making, through its telemarketing agents, unsolicited text message calls to cellular telephones and inducing sales through the use of deceptive offers for gift cards contained in those unsolicited text message calls. Plaintiffs also seek to obtain redress for all persons injured by the Defendant's conduct. Plaintiffs, for their class action complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief.

## NATURE OF THE CASE

1. Wireless spam is a growing problem in the United States. According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds—from coupons to phishing schemes—sent directly to user's cell phones." In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone." Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010) at http://pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx.

2. In a recent effort to promote paid subscriptions to its magazine products, Defendant Wenner, a publisher of well-known magazines such as *Us Weekly* and *Rolling Stone*, engaged in an especially pernicious form of marketing through its outside telemarketing agents: the transmission of deceptive advertisements in the form of "text message" calls to the cellular telephones of consumers throughout the nation.

3. By effectuating these unauthorized text message calls (hereinafter, "wireless spam"), Wenner, along with its telemarketing agents, caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies wireless spam and because consumers frequently have to pay their cell phone service providers for the receipt of such wireless spam, but also because such wireless spam contains deceptive and misleading advertising which Wenner and its agents do not honor.

4. In order to redress these injuries, Plaintiffs, on behalf of themselves and a nationwide class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), which prohibits unsolicited voice and text calls to cell phones, California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, § 17500, which prohibits unlawful, unfair and fraudulent conduct, as well as false advertising, and the common law for breach of contract.

5. On behalf of the classes and subclass defined herein, Plaintiffs seek an injunction requiring Defendant to cease all wireless spam activities and deceptive sales

1 practices, disgorgement of profits, and an award of statutory and/or actual damages to the
2 class members, together with costs and reasonable attorneys' fees.

## PARTIES

6. Plaintiffs Hubbard and Mills are family members and are domiciled in Contra Costa County, California. Plaintiff Hubbard is the authorized user of the cellular telephone number that received the offending text message alleged herein and Plaintiff Mills is the account holder of the family wireless plan through which both Plaintiffs receive cellular telephone service.

7. Defendant Wenner is a Delaware limited liability company with its principal place of business in New York. A publisher of several periodicals circulated nationwide, including *Us Weekly*, *Rolling Stone* and *Men's Journal*, Defendant does business throughout the United States both on its own and through several corporate subsidiaries such as Rolling Stone, LLC, Us Magazine, LLC, and Us Weekly, LLC, all of which in addition to Defendant are registered to do business in California and operate in this judicial district.

## JURISDICTION & VENUE

8. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (d), because (a) at least one member of the putative class is a citizen of a state different from the Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(1)-(2) because Defendant resides in this district, and because a substantial part of the events or omissions giving rise to this claim occurred in this district.

10. This Court has personal jurisdiction over the Defendant under Cal. Code Civ. Proc. § 410.10 because the Defendant is registered to do business in California and maintains offices in California, and because certain of the acts alleged herein were committed in California (and, specifically, the Northern District of California).

## INTRADISTRICT ASSIGNMENT

11. The conduct giving rise to the claims in this matter originated in the County of

1 | Contra Costa. Under Local Rule 3-2(c), this civil action should be assigned to either the San
2 | Francisco Division or the Oakland Division of the Northern District of California.

### COMMON ALLEGATIONS OF FACT

12. In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

13. One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" refers to a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

14. Defendant contracts with several different agents to generate subscription sales of its magazines through a variety of means. Many of the agents with whom Defendant contracts generate leads for the sale of subscriptions to Defendant's magazines through SMS message calls to consumers' cellular phones.

15. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cellular phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owners' person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide.

16. Unlike more conventional advertisements, wireless spam can actually cost its recipients money because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive, or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

17. As with other forms of advertising, marketers control the content that appears in the body of a text message in order to maximize the effectiveness of the advertisement. In certain cases, marketers employ misleading or deceptive content in the body of the message in order to increase the likelihood that the recipient will respond to the message.

**CLASS ACTION COMPLAINT**
4

18. Over the course of an extended period beginning in at least 2010, Defendant's agents directed the mass transmission of wireless spam to the cell phones nationwide of what Defendant hoped were potential customers of Defendant's products.

19. On or about November 30, 2010, Plaintiff Hubbard's cellular telephone rang, indicating that a text call was being received.

20. The "from" field of the transmission was identified as "650-283-0793," which is a dedicated telephone number operated by Defendant's agents that transmits text messages *en masse* through devices known as modem banks and/or carrier gateways.

21. The body of the text message received by Plaintiff Hubbard identified the name of a ubiquitous discount retail store familiar to consumers nationwide and offered a gift card of a stated cash value to be used at such store ("Gift Card") in order to induce recipients to call the toll-free telephone number (877) 711-5429 that was contained in the message.

22. The aforementioned text message received by Plaintiff Hubbard indicated that Hubbard was eligible to receive a Gift Card by calling the toll-free telephone number contained in the message.

23. Intrigued by her eligibility to receive the Gift Card, Plaintiff Hubbard called the toll-free telephone number contained in the body of the message the following day to claim the Gift Card.

24. Unbeknownst to Plaintiff Hubbard at that time, the toll-free telephone number contained in the text message she received was operated by Defendant and its agents for the purpose of selling Defendant's magazines to recipients of such text messages.

25. Indeed, when Plaintiff Hubbard called the above toll-free telephone number, she was offered a subscription to Defendant's *Us Weekly* magazine in exchange for a payment with her credit card in the amount of $9.95 and was further informed that in order for Hubbard to receive the Gift Card she would be required to provide her mailing address and pay a shipping fee ("Shipping Fee") of $2.95 also with her credit card.

26. During the call to the toll-free number, Plaintiff Hubbard purchased from Defendant and its agents both the *Us Weekly* magazine subscription and the Gift Card by

CLASS ACTION COMPLAINT
5

paying with her credit card the respective amount for each item. Hubbard was further informed that she could expect to receive both items at her mailing address in no more than thirty days from the date she paid for the items.

27. Shortly thereafter, charges from Defendant and its agents appeared on Plaintiff Hubbard's credit card statement in the respective amounts of $9.95, which was identified as originating from "WMA*US Weekly (800) 283-3956 NY," and $2.95, which was identified as originating from "GFT-Vouch (877) 775-0529 Smithtown NY."

28. While Plaintiff Hubbard did receive Defendant's *Us Weekly* magazine, at no time did Hubbard receive the Gift Card from Defendant or its agents, despite repeated attempts by Hubbard over the next several months to contact Defendant and/or its agents at the toll-free telephone number contained in the aforementioned text message, which Plaintiff subsequently learned had been disconnected.

29. At no time did Plaintiff Hubbard or Plaintiff Mills consent to the receipt of the above-referenced text message or any other such unsolicited text message advertising from or on behalf of Defendant.

## CLASS ACTION ALLEGATIONS

30. Plaintiffs bring this action, pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), on behalf of themselves and two classes (collectively the "Classes") and one subclass (the "Subclass") defined below:

> A) The "TCPA Class" consisting of Plaintiffs and all others nationwide who received one or more unauthorized text message advertisements on behalf of Wenner containing the toll-free telephone number 877-711-5429;
>
> B) The "Gift Card Class" consisting of Plaintiff Hubbard and all others nationwide who, on behalf of Wenner, received a text message advertisement offering a Gift Card, paid shipping fees for a Gift Card, and never received a Gift Card; and

C) The "California Gift Card Subclass" consisting of Plaintiff Hubbard and all others in California who received a text message advertisement on behalf of Wenner, paid shipping fees for a Gift Card promoted therein, and never received a Gift Card.

31. In order to make its *en masse* transmission of text message advertisements economical, Defendant's agents used lists of thousands of cellular telephone numbers of consumers and maintained sophisticated call centers to receive inbound calls and process charges for magazine subscriptions and Shipping Fees. As such, the TCPA Class, the Gift Card Class, and the California Gift Card Subclass each consists of thousands of individuals and other entities, making joinder impractical.

32. Furthermore, in order to sell as many of Defendant's *Us Weekly* magazines as possible, Defendant and its agents deliberately concealed Defendant's identity as the beneficiary of the text message advertising at issue and instead promoted nonexistent Gift Cards in the bodies of such text message advertisements which Defendant and its agents knowingly did not intend to honor, even after consumers including Plaintiff Hubbard paid for Gift Card "shipping fees."

33. Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Classes and the Subclass. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and the Subclass, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Classes or the Subclass.

34. Absent a class action, most members of the Classes and the Subclass would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

35. Defendant has, through its agents, acted and failed to act on grounds generally applicable to the Plaintiffs and the other members of the Classes in: (a) transmitting the wireless spam at issue; and (b) fraudulently charging Shipping Fees for nonexistent Gift Cards, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and the Subclass.

36. The factual and legal bases of Defendant's liability to Plaintiffs and to the other members of the Classes and Subclass are the same, resulting in injury to the Plaintiffs and to all other members of the Classes and Subclass as a result of the transmission of the wireless spam alleged herein, and as a result of the charging of Shipping Fees for nonexistent Gift Cards. Plaintiffs and the other members of the Classes and Subclass have all suffered harm and damages as a result of Defendant's and its agents' unlawful and wrongful conduct in the transmission of the wireless spam and failure to honor the Gift Card offer.

37. There are many questions of law and fact common to the claims of Plaintiffs and the other members of the TCPA Class, and those questions predominate over any questions that may affect individual members of the TCPA Class. Common questions for the TCPA Class include but are not limited to the following:

 (A) whether Defendant and/or its agents sent one or more text messages to the TCPA Class members;

 (B) whether the text messages sent by or on behalf of Defendant violate the TCPA;

 (C) whether Defendant and/or its agents used an automatic telephone dialing system to transmit the text messages at issue;

 (D) whether Defendant's conduct violated the Class members' respective rights to privacy; and

 (E) whether Defendant's conduct was willful such that the Class members are entitled to treble damages.

38. There are many questions of law and fact common to the claims of Plaintiff Hubbard and the other members of the Gift Card Class and the California Gift Card Subclass,

**CLASS ACTION COMPLAINT**
8

and those questions predominate over any questions that may affect individual members of the Gift Card Class and the California Gift Card Subclass. Common questions for the Gift Card Class and the California Gift Card Subclass include but are not limited to the following:

    (A)    whether the conduct of Defendant and its agents constitutes a breach of contract to provide Gift Cards in the amounts identified in the text messages to Plaintiff Hubbard and the other Gift Card Class members;

    (B)    whether Plaintiff Hubbard and the Gift Card Class members are entitled to recovery of the stated cash value of the Gift Cards as damages for Defendant's breach of contract;

    (C)    whether Plaintiff Hubbard and the Gift Card Class members are entitled to reimbursement of the Shipping Fees that they paid to Defendant and/or its agents.

Additionally, common questions for the California Gift Card Subclass include but are not limited to the following:

    (D)    whether Defendant's and its agents' conduct is governed by the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (the "UCL");

    (E)    whether the conduct of Defendant and its agents constitutes a violation of the UCL;

    (F)    whether Defendant's and its agents' conduct is governed by the False Advertising Law Cal. Bus. & Prof. Code §§ 17500 et seq. ("FAL"); and

    (G)    whether the conduct of Defendant and its agents constitutes a violation of the FAL.

**FIRST CAUSE OF ACTION**

**(Violation of the TCPA, 47 U.S.C. § 227, *et seq.*: on behalf of the TCPA Class)**

39.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

CLASS ACTION COMPLAINT
9

40. Defendant, through its agents, made unsolicited commercial text calls, including the message described in paragraphs 17-21, to the wireless telephone numbers of the TCPA Class. Each such text message call was made using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers. By using such equipment, Defendant and its agents were able to effectively send text messages simultaneously to lists of thousands of consumers' wireless telephone numbers without human intervention.

41. These text calls were made *en masse* through the use of a dedicated telephone number and without the prior express consent of the Plaintiffs and the other members of the TCPA Class to receive such wireless spam.

42. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, the members of the TCPA Class suffered actual damages by having to pay their respective wireless carriers for the text messages where applicable and, under section 227(b)(3)(B), are each entitled to, *inter alia,* a minimum of $500.00 in damages for each violation of said Act.

43. Because Defendant had knowledge that Plaintiffs and the TCPA Class members did not consent to the receipt of the aforementioned wireless spam, the Court should, pursuant to section 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiffs and the other members of the TCPA Class.

**SECOND CAUSE OF ACTION**
**(Breach of Contract on behalf of the Gift Card Class)**

44. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

45. The text messages sent by or on behalf of Defendant state that Plaintiff Hubbard and the members of the Gift Card Class were eligible to receive a Gift Card by calling the toll-free telephone number contained in such text messages. When Plaintiff Hubbard and the members of the Gift Card Class called the toll-free telephone number,

however, they were offered subscriptions to Defendant's *Us Weekly* magazine, and were offered the Gift Card only in exchange for an agreement to pay Shipping Fees for such Gift Cards. By agreeing to pay for such subscriptions and Shipping Fees, Plaintiff Hubbard and the other members of the Gift Card Class accepted this offer and formed contracts with Defendant regarding the purchase and delivery of such magazines and gift cards.

46. Plaintiff Hubbard and the members of the Gift Card Class fully performed under such contracts by paying the subscription fees and Shipping Fees, as promised, by credit card.

47. Defendant and its agents materially breached such contracts by refusing to deliver the Gift Cards, despite full performance by Plaintiff Hubbard and the members of the Gift Card Class.

48. As a result of the breach, Plaintiff Hubbard and the members of the Gift Card Class have each suffered damages in the amount of the stated cash value of the Gift Cards. Plaintiff Hubbard and the members of the Gift Card Class have also suffered damages in the amount of the Shipping Fee.

### THIRD CAUSE OF ACTION
**(Violation of California's Unfair Competition Law. Cal Business and Professional Code § 17200, *et seq.* on behalf of the California Gift Card Subclass)**

49. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

50. California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

51. The UCL prohibits any unlawful, unfair or fraudulent business act or practice. A business practice need only meet one of the three criteria to be considered unfair competition. An unlawful business practice is anything that can properly be called a business practice and that at the same time is forbidden by law.

52. The transmission of these text messages by or on behalf of Defendant was

unlawful because it violated the TCPA as set forth above. In addition, the transmission of the text messages at issue violated the California False Advertising Law, California Business and Professions Code Section 17500, *et seq*, as fully set forth below, because the text message communications at issue falsely state that Plaintiff Hubbard and the other members of the California Gift Card Subclass have been chosen to receive Gift Cards to a discount retail store, and caused Plaintiff Hubbard and the other members of the California Gift Card Subclass to incur costs for Shipping Fees in connection with such Gift Cards.

53. Defendant's text message advertisements and calls to the toll-free number provided therein constitute communications, which falsely represented that Plaintiff Hubbard and the other members of the California Gift Card Subclass are eligible to receive a Gift Card to be used at a discount retail store nationwide. These communications were false, fraudulent and unfair.

54. Plaintiff Hubbard and the members of the California Gift Card Subclass reasonably expected to receive Gift Cards as Defendant represented in these communications and after paying Shipping Fees.

55. Defendant and/or its agents never intended to provide Gift Cards, have not provided Gift Cards to Plaintiff or members of the California Gift Card Subclass and, as such, these communications are likely to deceive consumers, like Plaintiffs, acting reasonably under the circumstances.

56. Defendant engaged in these marketing practices to increase its revenues and profits through the sale of its magazines, caused substantial injury to consumers and competition in the process, and provided no countervailing benefits to consumers or competition through its use of deceptive text message advertising and failure to provide Gift Cards as promised.

57. Plaintiff Hubbard and the members of the California Gift Card Subclass relied to their detriment on Defendant's unfair, fraudulent, and unlawful business practices. Given the deceptive nature of the unfair, fraudulent, and unlawful practices, Plaintiff and the California Gift Card Class could not have reasonably avoided injury. Had Plaintiff Hubbard

CLASS ACTION COMPLAINT
12

and the members of the California Gift Card Subclass been adequately informed and not intentionally deceived by Defendant and its agents, they would have acted differently by, without limitation:

    a.   not dialing 877-711-5429 to reach Defendant's agents;

    b.   not incurring the time and expense of responding to the offer of a Gift Card;

    c.   not incurring the cost of paying the Shipping Fee; and

    d.   not providing their personal information, including their name and street address, required to process the payment for the Gift Card, to Defendant and its agents.

58. The acts alleged above are unlawful, unfair and fraudulent business acts or practices and constitute unfair competition under the UCL.

59. These UCL violations have damaged Plaintiff Hubbard and the members of the California Gift Card Subclass by causing them to pay the Shipping Fee, and to provide their personal information to Defendant and its agents under the false pretense that Defendant would provide a Gift Card.

60. Plaintiff Hubbard, on her own behalf and on behalf of the members of the California Gift Card Subclass, seeks an order enjoining Defendant's unfair competition alleged herein, and restitution of property gained by such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest, attorneys' fees and costs pursuant to, in part, Cal. Code Civ. Proc. § 1021.5.

**FOURTH CAUSE OF ACTION**
**(Violation of False Advertising Law Cal. Bus. & Prof. Code §§ 17500 *et seq.* on behalf of the California Gift Card Subclass)**

61. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

62. Defendant, through its agents, engaged in advertising and marketing to the public, and transmitted text messages *en masse* on a nationwide basis, including in

California. Through the text messages, Defendant publically represented and advertised that, by calling a toll-free number provided in the body of these messages and thereafter paying a Shipping Fee, a Gift Card would be provided. Defendant and its agents made such a false representation with the intent to induce Plaintiff Hubbard and California Gift Card Subclass members to pay a Shipping Fee for a Gift Card and to purchase Defendant's magazine products.

63. Defendant's advertising and marketing statements contained in the text message and in calls to the toll-free numbers were and are untrue or misleading and likely to deceive the public because: (a) Defendant and/or its agents knew or should have known that the Gift Cards would not be delivered; (b) the messages suggested an association or affiliation with a ubiquitous discount retail store that did not exist; and (c) the messages omitted any reference to the true product being advertised – *i.e.*, Defendant's magazines.

64. In making and disseminating the statements alleged herein, Defendant knew or should have known that its statements, and those of its agents, were false and misleading and therefore in violation of §§ 17500, *et seq*.

65. Plaintiffs and the California Gift Card Subclass members relied on these statements in calling the toll-free number and/or in paying Shipping Fees.

66. As a direct and proximate result of Defendant's false advertising, Plaintiffs and the California Gift Card Subclass have suffered injury in fact and lost monies to Defendant.

67. Plaintiffs seek an order enjoining Defendant from continuing to engage in the false advertising described herein. Plaintiffs seek an order (1) requiring Defendant to cease the false advertising practices described herein; (2) requiring Defendant to restore to the California Gift Card Subclass members any monies acquired by means of false advertising (restitution); and, (3) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

WHEREFORE, Plaintiffs Jasmine Hubbard and Marvel Mills, on behalf of themselves and the Classes and Subclass, prays for the following relief:

a) An order certifying the Classes and Subclass as defined above and designating Plaintiffs and their Counsel as representatives of the Classes and Subclass;

b) An award of actual and/or statutory damages;

c) An injunction requiring Defendant to cease all wireless spam activities;

d) An injunction requiring Defendant to cease all deceptive marketing practices;

e) Restitution of all property or monies gained or acquired by the unfair competition and/or false advertising alleged herein;

f) An award of punitive damages;

g) An award of reasonable attorneys' fees and costs; and

h) Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: September 20, 2011

**JASMINE HUBBARD AND MARVEL MILLS,**
**individually and on behalf of a class of similarly situated individuals**

By: Sean P. Reis
One of Plaintiffs' attorneys

SEAN REIS (SBN 184004)
sreis@edelson.com
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

CLASS ACTION COMPLAINT
15