1
2
3
4

SEAN REIS (SBN 184004)
sreis@edelson.com
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

5

*Counsel for Plaintiffs*

6

7

8

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

9

10

11

JASMINE HUBBARD and MARVEL
MILLS, individually and on behalf of a
class of similarly situated individuals

Case No. 3:11-cv-04648-EMC

12

13

                    Plaintiffs,

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO
DISMISS OR, IN THE
ALTERNATIVE, TO TRANSFER TO
THE SOUTHERN DISTRICT OF NEW
YORK**

14

          v.

15

16

17

WENNER MEDIA LLC, a Delaware
limited liability company

Date: February 17, 2012
Time: 1:30 p.m.
Place: Courtroom 5, 17th Floor
Judge: Hon. Edward M. Chen

18

                    Defendant.

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ii

TABLE OF AUTHORITIES ...............................................................................................iv

INTRODUCTION ...................................................................................................................1

ARGUMENT..............................................................................................................................2

  I.  THE COMPLAINT PROPERLY STATES A CLAIM FOR EACH OF THE CLAIMS
     FOR RELIEF PLED ....................................................................................................2

    A. Plaintiffs Have Put Defendant "On Notice" of its Violations of the TCPA .............................2

      1.  Plaintiffs sufficiently describe Defendant's role in the transmission of unauthorized text
        message spam...................................................................................................................3

      2.  Wenner is Directly Liable for its TCPA violations .................................................................5

      3.  Plaintiffs allege an injury-in-fact sufficient to satisfy Article III standing requirements ......7

    B. Plaintiffs State a Claim for Breach of Contract ..............................................................10

      1.  Wenner is Bound Because it Accepted the Benefits of the Gift Card Contract .................10

      2.  Wenner is Liable Under an Agency Theory .............................................................11

    C. Plaintiffs Properly State a Claim Under the UCL...........................................................13

      1.  Plaintiffs Have Standing Under the UCL Because They Have Alleged Economic Injury
        Resulting from the Unlawful Business Practice ...............................................................14

      2.  Plaintiffs' Claims are Not Premised on Vicarious Liability .................................................15

      3.  Plaintiffs State a Claim Under Each Prong of the UCL ......................................................16

        i.   Only Allegations Sounding in Fraud Must to Pled With Particularity ..........................16

        ii.  Plaintiffs have alleged that Wenner acted "Unlawfully" under the UCL.....................17

        iii. Plaintiffs Have Stated a Claim Under the UCL "Unfair" Prong .................................17

        iv. Plaintiffs have alleged that Wenner acted "Fraudulently" under the UCL.....................18

      4.  The Complaint States a Claim Under the California False Advertising Law.....................20

  II. TRANSFER OF THIS CASE TO THE SOUTHERN DISTRICT OF  NEW YORK IS
     BOTH IMPOSSIBLE AND IMPROPER..........................................................................21

    A. Transfer of venue should be denied because the S.D.N.Y. lacks subject matter jurisdiction
     over this case....................................................................................................................21

    B. Even under a traditional "convenience and interest-of-justice" analysis, transfer of this case
     is improper .......................................................................................................................22

      1.  Plaintiffs' Choice of Forum .............................................................................................23

      2.  Convenience of the Parties...............................................................................................25

      3.  Convenience of the Witnesses and Ease of Access to the Evidence ...................................26

4. Familiarity of Each Forum with the Applicable Law ........................................................28

5. Feasibility of Consolidation with Other Claims ........................................................28

6. Any Local Interest in the Controversy ........................................................28

7. The Relative Court Congestion and Time of Trial in Each Forum........................................................29

**CONCLUSION** ........................................................**29**

1

## TABLE OF AUTHORITIES

2

**Cases:**

3

*Abbas v. Selling Source*, No. 09-cv-3413, 2009 WL 4884471 (N.D. Ill. Dec. 14, 2009) ..............4

4

*ABC Int'l Traders, Inc. v. Matsushita Elec. Corp.* 14 Cal. 4th 1247 (1997)................................13

5

6

*Airborne Beepers & Video, Inc. v. AT&T Mobility* LLC, 499 F.3d 663 (7th Cir. 2007) ...............2

7

*Arias v. Capital One, N.A.*,
    No. C 10-1123 MHP, 2011 WL 835610 (N.D. Cal. Mar. 4, 2011)...................................7

8

9

*Arvidson v. Reynolds Metals Co.*, 107 F. Supp. 51 (W.D. Wash. 1952)................................22

10

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).................................................................................2, 7

11

*Bank of the West v. Superior Court*, 2 Cal. 4th 1254 (1992).........................................13

12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).........................................................2

13

*Benson v. JPMorgan Chase Bank, N.A.*, Case Nos. C-09-5272 EMC,
    C-09-5560 EMC, 2010 WL 1445532 (N.D. Cal. Apr. 7, 2010).......................................21

14

*Bohara v. Backus Hosp. Medical Benefit Plan*, 390 F. Supp. 2d 957 (C.D. Cal. 2005) ..............27

15

*Bonime v. Avaya*, 547 F.3d 497 (2d Cir. 2008) ..........................................................22

16

*Brockey v. Moore*, 107 Cal. App. 4th 86 (2003)..........................................................20

17

18

*Brooks v. ComUnity Lending, Inc.*,
    No. 07-cv-5-4501 JF PVT, 2010 WL 2680265 (N.D. Cal. Jul 6, 2010) ..........................15

19

20

*Camacho v. Auto. Club of So. Cal.*, 142 Cal. App. 4th 1394 (2006)............................................17

21

*Cel-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)...............................13

22

*Charvat v. Echostar Satellite, LLC*, 676 F. Supp. 2d 668 (S.D. Ohio 2009)................................5

23

*Committee on Children's Television, Inc. v. General Foods Corp.*,
    35 Cal. 3d 197 (1983) ...............................................................................19, 20

24

*Concha v. London*, 62 F.3d 1493 (9th Cir. 1995)..........................................................18

25

26

*Dart Indus., Inc. v. Commercial Union Ins. Co.*, 28 Cal. 4th 1059 (2002) ..................................12

27

iv

28

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986)...........................22

*Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010) .......................................................18

*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010) ........................................................10

*eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000) ....................................9

*Emery v. VISA Int'l Serv. Ass'n*, 94 Cal. App. 4th 952 (3d. Dist. 2002) .......................................7

*Erickson v. Pardus*, 551 U.S. 89 (2007) ........................................................................................2

*Fausto v. Credigy Services Corp.*, 251 F.R.D. 427 (N.D. Cal. 2008) ...........................................27

*Ferrington v. McAfee, Inc.*,
    No. 10-cv-1455 LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010)...................................13

*Foster v. Nationwide Mut. Ins. Co.*,
    No. C-07-04928-SI, 2007 WL 4410408 (N.D. Cal. Dec. 14, 2007)...................................24

*Getz v. Boeing Co.*, 547 F. Supp. 2d 1080 (N.D. Cal. 2008)................................................23, 28

*Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1986) ...............................................................6

*Glaxo Group Limited v. Genentech, Inc.*,
    No. C-10-00675-JSW, 2010 WL 1445666 (N.D. Cal. Apr. 12, 2010)..............................25

*Gonzales v. Infosys, Ltd.*,
    No. C-09-04112-MHP, 2010 WL 1854146 (N.D. Cal. May 6, 2010)...............................27

*Greenberg v. Sala*, 822 F.2d 882 (9th Cir. 1987) ..........................................................................6

*Gutierrez v. Barclays Group*,
    No. 10-cv-1012 DMS (BGS), 2011 WL 579238 (S.D Cal. Feb. 9, 2011) .................. 7-8, 9

*Harris v. Superior Court (Mirsaidi)*, 188 Cal. App. 3d 475 (1986)...........................................10

*Hawkins v. First Horizon Home Loans*,
    Civ. No. S-10-1876 FCD/GGH, 2010 WL 4823808 (E.D. Cal. Nov. 22, 2010)................7

*Hernandez v. Hilltop Fin. Mortg., Inc.*, 622 F. Supp. 2d 842 (N.D. Cal. 2007).........................6

*Higson v. Montgomery Ward & Co., Inc.*, 263 Cal. App. 2d 333 (1968).....................................12

*Hill v. Nat'l Collegiate Athletic Assn.*, 865 P.2d 633 (Cal. 1994).................................................9

*Holliday v. Lifestyle, Inc.*,
    No. C-09-4995-RS, 2010 WL 3910143 (N.D. Cal. Oct. 5, 2010) .................................23

*Holster v. Gatco, Inc.*, 485 F. Supp. 2d 179 (E.D.N.Y. 2007) .........................................22

*In re Actimmune Marketing Litig.*,
    No. 08-cv-2376, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) .......................................19

*In re First Alliance Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006) ........................................13

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) ...................................................... 18-19

*Italian Colors Rest. v. American Express Co.*,
    No. C-03-3719-SI, 2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) ...............................24

*Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116 (9th Cir. 2008) .....................2

*Jura v. Sunshine Biscuits, Inc.*, 118 Cal. App. 2d 442 (1953) .......................................12

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002) ...................................................................21

*Kazemi v. Payless Shoesource Inc.*,
    No. 09-cv-5142, 2010 WL 963225 (N.D. Cal. Mar. 16, 2010) .................................2, 5

*Kida Western Holdings, LLC v. Mercedes-Benz of Laguna Niguel*,
    No. 207-cv-00523-LRH-RAM, 2008 WL 217043 (D. Nev. Jan. 18, 2008) ....................27

*Kiseskey v. Carpenters' Trust for So. California*,
    144 Cal. App. 3d 222 (1983) .........................................................................................6

*Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010) .............................4, 5

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) ...............................13, 14, 20

*Leonel v. Am. Airlines, Inc.*, 400 F.3d 702 (9th Cir. 2005) .............................................9

*Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987) ..............................................................23

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ......................................................8

*Malloy v. Fong*, 37 Cal. 2d 356 (1951)...........................................................................12

*Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992 (N.D. Cal. 2009).......................16-17

*Maryland v. Universal Elections*, 787 F. Supp. 2d 408 (D. Md. 2011)............................5

vi

*Massachusetts v. E.P.A.*, 549 U.S. 497 (2007) ............................................................8

*Mathis v. County of Lyon*,
    No. 2:07-CV-00628-KJD-GWF, 2007 WL 3230142 (D. Nev. Oct. 24, 2007) ..........22, 23

*Mazza v. American Honda Motor Co.*, 254 F.R.D. 610 (C.D. Cal. 2008) .............................19, 20

*McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457 (2006)..................................13

*Munson v. Del Taco, Inc.*, 46 Cal. 4th 661 (2009) ......................................................17

*Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090 (N.D. Cal. 2008)................................15

*Quezada v. Loan Ctr. Of Cal., Inc.*,
    No. 08-cv-177 WBS KJM, 2008 WL 5100241 (E.D. Cal. Nov. 26, 2008)................ 15-16

*Rakestraw v. Rodriguez*, 8 Cal. 3d 67 (1972) ..............................................................12

*Recorded Picture Co. v. Nelson Entertainment, Inc.*, 53 Cal. App. 4th 350 (1997) ...................10

*Robinson v. Midland Funding, LLC*,
    No. 10-cv-2261, 2011 WL 1434919 (S.D. Cal. Apr. 13, 2011) ...................................4

*Roe v. Wade*, 410 U.S. 113 (1973) ............................................................................9

*Royal Queentex Enterprises v. Sara Lee Corp.*,
    No. C-99-4787 MJJ, 2000 WL 246599 (N.D. Cal. Mar. 1, 2000).......................24, 26, 27

*RPost Holdings, Inc. v. Trustifi Corp.*,
    No. CV 11-2118 PSG (SHx), 2011 WL 4802372 (C.D. Cal. Oct. 11, 2011).....................7

*Sandry v. First Franklin Fin. Corp.*,
    10-cv-1923, OWW SKO, 2011 WL 1748613 (E.D. Cal. May 6, 2011) .........................14

*Satterfield v. Simon & Schuster*, 569 F.3d 946 (9th Cir. 2009)....................................4, 5

*Scripps Health v. Blue Cross & Blue Shield of Kan.*, Inc.,
    No. 10-cv-2028 DMS RBB, 2011 WL 292142 (N.D. Cal. Mar. 29, 2011) ...................10

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
    --U.S.--, 130 S.Ct. 1431 (2010) ...........................................................................22

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035 (9th Cir. 2010).................... 17-18

*Shulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86 (2007) ...............................................16

*SMI-Owen Steel Co., Inc. v. St. Paul Fire & Marine Ins. Co.*,
113 F. Supp. 2d 1101 (S.D. Tex. 2000) ................................................................. 26-27

*Spillman v. Dominos Pizza, LLC*,
No. 10-cv-349, 2011 WL 721498 (M.D. La. Feb. 22, 2011) .................................5

*Thrifty-Tel v. Bezenek*, 46 Cal. App. 4th 1559 (1996) ...............................................9

*Union Pac. R. Co. v. Botsford*, 141 U.S. 250 (1891) .................................................9

*United States v. Dish Network, LLC*, 667 F. Supp. 2d 952 (C.D. Ill. 2009)...................5

*Valazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049 (C.D. Cal. 2008) ...............16

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ...............................17

*Villegas v. J.P. Morgan Chase & Co.*,
No. C09-00261, 2009 WL 605833 (N.D. Cal., Mar. 9, 2009)...............................2

*Walker v. Discover Fin. Servs.*,
No. C-10-3013-SI, 2010 WL 4269193 (N.D. Cal. Oct. 25, 2010) .......................25

*Warth v. Seldin*, 422 U.S. 490 (1975) ...............................................................8, 9

*Wilson v. City of San Jose*, 111 F.3d 688 (9th Cir. 1997) .....................................24

*Wyeth v. Anchen Pharm.*,
No. SACV06-386JVS (MLGx), 2006 WL 6103249 (C.D. Cal. Dec. 20, 2006)............. 6-7

**Statutory Provisions:**

28 U.S.C. § 1404...............................................................................................21

47 U.S.C. § 227(b)..........................................................................................4, 5

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ........................................................13

Cal. Bus. & Prof. Code § 17500 .......................................................................20

Cal. Civ. Code §1589.......................................................................................10

Cal. Civ. Code §2304.......................................................................................12

Cal. Civ. Code §2305.......................................................................................12

Cal. Civ. Code §2307.......................................................................................12

viii

Fed. R. Civ. P. 8 .................................................................................................... 2

Fed. R. Civ. P. 9 ............................................................................................... 7, 14

Fed. R. Civ. P. 12 ................................................................................................. 3

U.S. CONST., art. III, § 2 ...................................................................................... 8

**Miscellaneous Authorities:**

6 Wright and Miller, Federal Practice and Procedure, 1445 (3d Ed.) ......................... 28

Antonin Scalia, *The Doctrine of Standing as an Essential Element*
       *of the Separation of Powers*, 17 SUFFOLK U. L. REV. 881 (1983) ..................... 8

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*
       Memorandum Opinion and Order, 100 FCC Rec 12391 (1995) ......................... 3

S. Rep. No. 102-178, *reprinted in* 1991 U.S.C.C.A.N. 1968 ..................................... 8

1

## INTRODUCTION

Defendant Wenner Media, LLC ("Wenner") brings a Motion to Dismiss that its own evidence largely defeats, and a Motion for Transfer to a Court that it knows cannot exercise jurisdiction, all in a bald attempt to smear the Plaintiffs' attorneys and try to poison the well in this Court. The Court should reject Wenner's attempt and allow this case to proceed to discovery and class certification.

Woven throughout Wenner's Motion are references to a previous case filed in the Northern District of Illinois against Wenner, by a different plaintiff but the same law firm. The Plaintiffs in this case – Jasmine Hubbard and Marvel Mills, both of whom live in this District – attempted to substitute as Plaintiffs in that case, but Wenner opposed their intervention. As a result, and with Wenner's knowledge and approval, Plaintiffs Hubbard and Mills withdrew those motions (making explicit that they would file elsewhere) and the earlier case was dismissed.[1] This District was the natural place for the Plaintiffs to file this case, so they filed it here.

The gist of Wenner's Motion to Dismiss is that Wenner had nothing to do with the text messages at issue, but that simply is untrue. Wenner repeatedly contracts with telemarketers who use misleading spam text messages to drive inbound calls to a call center where consumers are pitched offers for Wenner's *US Weekly* magazine. Wenner also argues that the allegations of the Complaint are insufficient to properly apprise it of the claims against it, but the Complaint gave Wenner enough information to immediately identify both the telemarketer it hired and the marketing company that the telemarketer hired; Wenner's arguments about the sufficiency of the Complaint are defeated by its own declarations. Wenner's substantive arguments against the sufficiency of the California state-law claims are similarly flawed, and have been rejected by courts repeatedly. The lack of substance to these arguments exposes Wenner's real rationale for filing its Motion.

Wenner's Motion to Transfer is even less credible. Wenner asks this Court to transfer the case to a Court (one of the few in the nation) that would not accept it – the Second Circuit has unambiguously rejected subject matter jurisdiction over TCPA class action suits. But even if the case

---

[1] *See* Declaration of John C. Ochoa, at ¶ 2, Ex. A, p. 5-6.

P's Opposition to Def.'s Mot.
to Dismiss or Transfer Venue                                   No. 11-cv-04648 EMC

1    could have been brought in that Court, transfer would be inappropriate.  The parties in this case are

2    all residents of California, and the offending text messages are from a phone number in this District.

3            For all the reasons discussed below, Wenner's Motion should be denied in its entirety.

4                                            **ARGUMENT**

5    **I.      THE COMPLAINT PROPERLY STATES A CLAIM FOR
             EACH OF THE CLAIMS FOR RELIEF PLED**
6

7            Under Federal Rule of Civil Procedure 8(a)(2), Plaintiffs' Complaint need only contain a

8    "short and plain statement of the claim showing that [they are] entitled to relief."  Here, Wenner

9    claims that *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as further modified by *Ashcroft v.*

10   *Iqbal*, 129 S. Ct. 1937 (2009), has somehow radically altered Rule 8(a)(2) and created a fact-pleading

11   standard that Plaintiffs have failed to meet.[2]  Defendant's arguments are both without merit and

12   redundant of arguments previously rejected by federal courts nationwide.  *See, e.g., Kazemi v.*

13   *Payless Shoesource Inc.*, No. 09-cv-5142, 2010 WL 963225 (N.D. Cal. Mar. 16, 2010).  Under

14   *Twombly*, a plaintiff's allegations will not be dismissed under Rule 12(b)(6) if two minimum hurdles

15   are cleared: (1) the complaint must describe the claim in sufficient detail to give the defendant fair

16   notice of what the claim is and the grounds upon which it rests; and (2) the complaint's allegations

17   must plausibly suggest that the plaintiff has a right to relief, raising the possibility above a level of

18   speculation.  *Twombly*, 550 U.S. at 544-55.  A complaint must "provide a 'short and plain statement

19   of the claim showing that [he] is entitled to relief.'  This is not an onerous burden. 'Specific facts are

20   not necessary; the statement need only give the defendant[s] fair notice of what . . . the claim is and

21   the grounds upon which it rests.'"  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122

22   (9th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 127 (2007)).

23       **A. Plaintiffs Have Put Defendant "On Notice" of its Violations of the TCPA**

24           Defendant asserts that Plaintiffs' TCPA claims fail to meet the current federal pleading

25   _____
26   [2] Courts nationwide have noted that "In *Erickson v. Pardus*, …decided two weeks after *Twombly*, the Court clarified that
     *Twombly* did not signal a switch to fact-pleading in the federal courts.  *Erickson* reaffirms that under Rule 8 "[s]pecific
     facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds
27   upon which it rests.'"  *Villegas v. J.P. Morgan Chase & Co.*, No. C09-00261, 2009 WL 605833, at *2 (N.D. Cal., Mar. 9,
     2009) (citing *Airborne Beepers & Video, Inc. v. AT&T Mobility* LLC, 499 F.3d 663, 667-68 (7th Cir. 2007)).

28                                                    2

1    standards.  (Dkt. 18, pp. 7-18.)  This is a strange argument, considering that the declarations of

2    Sharon Schneier and Eric Hass identify the "agents" referenced in Plaintiffs' Complaint and confirm

3    many of the facts alleged therein, including that Plaintiff purchased Wenner products, and that

4    Wenner had a contractual relationship that confirms Plaintiffs' allegations of agency.  Since the

5    Complaint has put Defendant on <u>actual</u> notice, these arguments ring hollow.

6         Wenner's actions in this case were designed specifically so it could not be immediately

7    identified as the sender of text message spam.  Instead of advertising its magazine products directly in

8    the body of the text message, Wenner, with the cooperation of its agents, advertised generic "gift

9    cards" to induce calls to a toll-free phone number.  (Dkt. 1, ¶¶ 17, 21-24.)  Once unwitting recipients

10   called the toll-free number in the text message body, the identity of the text message spammer is

11   revealed when the consumer is offered Wenner's magazine products.  (Dkt. 1, ¶¶ 24-27.)

12        Wenner cannot skirt liability under the TCPA by concealing its identity and engaging third-

13   parties to transmit text message spam for its benefit.  The FCC has stated that its "rules generally

14   establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any

15   violations."  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,

16   Memorandum Opinion and Order, 100 FCC Rec 12391, 12397 ¶ 13 (1995).  Plaintiffs have

17   adequately pled facts that establish Wenner's liability under the TCPA.  Wenner also argues, almost

18   in passing, that Plaintiffs fail to allege an "injury-in-fact" to confer standing under Article III of the

19   Constitution.  (Dkt. 16, 12-13.) This argument is without merit, as Plaintiffs allege violations to their

20   statutory and constitutional rights to privacy, as well as monetary loss.  These are legally cognizable

21   injuries that satisfy Article III.

22         **1.  Plaintiffs sufficiently describe Defendant's role in the transmission of
             unauthorized text message spam**

23

24        Defendant's first argument is that because Plaintiffs plead "absolutely no detail" about the

25   text message they received, they fail to state a claim under the TCPA.  (Dkt. 18, pp. 8-9.)  Wenner's

26   argument fails.  Under the TCPA, the actual words used on the call (or in this case, the words

27

28

P's Opposition to Def.'s Mot.
to Dismiss or Transfer Venue                                              No. 11-cv-04648 EMC

1    appearing in the text message) are immaterial to stating a claim under the TCPA.[3]  Wenner cites to no

2    controlling caselaw for its argument, because under § 227(b)(1)(A)(iii) of the TCPA, the actual words

3    used in the call or message are irrelevant to establishing a violation.  There are three elements to a

4    claim under § 227(b)(1)(A)(iii) – Plaintiff must plead: (1) an unauthorized call, (2) to a cellular

5    telephone, and (3) using an ATDS.  *See Satterfield v. Simon & Schuster*, 569 F.3d 946, 950 (9th Cir.

6    2009) (citing 47 U.S.C. § 227(b)(1)(A)(iii)).  Not only do Plaintiffs satisfy this standard, they also

7    provide additional factual detail surrounding the spam text message to put Wenner "on notice" of the

8    claims against it, including the time the message was received, the telephone number from which the

9    message was sent, the substance of the message, the toll-free telephone number appearing in the text

10   message, and the transactions with Defendant resulting from the unauthorized text message.

11         Specifically, Plaintiffs allege that they received a text message call on November 30, 2010,

12   (Dkt. 1, ¶ 19), on Plaintiff Hubbard's cellular telephone from phone number "650-283-0793" (Dkt. 1,

13   ¶ 20).  Plaintiffs further allege that such call was made without their consent (Dkt. 1, ¶¶ 29, 40) using

14   technology that had the capacity to store or produce telephone numbers to be called using a random

15   or sequential number generator and to dial such numbers (Dkt. 1, ¶ 40).  This is all that is required to

16   state a claim under the TCPA.  As explained in *Kramer v. Autobytel, Inc.*, a plaintiff need only

17   describe the message or call received in such a way to provide a defendant with "fair notice" of the

18   claims against it. 759 F. Supp. 2d 1165, 1172 (N.D. Cal. 2010) (citing *Abbas v. Selling Source*, No.

19   09-cv-3413, 2009 WL 4884471, at *2 (N.D. Ill. Dec. 14, 2009); *see also Robinson v. Midland

20   Funding, LLC*, No. 10-cv-2261, 2011 WL 1434919, at *3 (S.D. Cal. Apr. 13, 2011) ("neither section

21   227(b)(1)(A)(iii) nor Federal Rule of Civil Procedure 8 requires Plaintiff to plead his claim with

22   particularity.").  The plaintiff in *Robinson* did not plead the verbatim language of the text message,

23   nor was he required to under the TCPA or Federal Rules.[4]  But the Plaintiffs here go even further,

24   describing the content of the text message.  (Dkt. 1, ¶¶ 21-22.)

25

26   ---
     [3] Plaintiffs bring their claim under 47 U.S.C. § 227(b)(1)(A)(iii), which does not depend on the content of the call or
     message.  (*See* Dkt. 1, ¶ 42.)

27   [4] *See* Complaint, *Robinson v. Midland Funding*, No. 10-cv-2261, Dkt. 1 (S.D. Cal. filed Nov. 2, 2010).

28                                                          4

1    Contrary to Defendant's statement that Plaintiffs provide "absolutely no detail" about their

2    claims, Plaintiffs pled when they received the message, the phone number used to transmit the

3    message, the content of the message, and the toll-free telephone number contained in the message

4    that connected them with Wenner Media's agents.  Based on the Complaint, Defendant quickly

5    identified the transaction and the other actors involved.  Defendant's argument is without merit.

6            **2.  Wenner is Directly Liable for its TCPA violations**

7            Plaintiffs allege that Defendant Wenner Media is <u>directly</u> liable under the TCPA for

8    transmission of this text message spam.  (Dkt. 1, ¶¶ 3, 40.)  At this stage of the litigation, Plaintiffs

9    connect Wenner Media to the text messages the only way they can—by presenting evidence that,

10   although Wenner was not referenced in the text message, its products were sold in direct response to

11   calls to the toll-free telephone number in the body of the text message.  (Dkt. 1, ¶¶ 21-24.)  In

12   litigation under the TCPA, the advertisers and/or retailers on whose behalf unauthorized text

13   messages are sent do not normally have the technical capability to transmit text messages *en masse*.

14   Instead, these retailers engage third-parties to transmit the spam text messages for them.[5]  This case is

15   no different.  Defendant Wenner contracted with third-parties to transmit text message spam on its

16   behalf, and it can be held liable under the TCPA for its conduct.[6]

17

18           Wenner disingenuously argues that Plaintiffs have failed to allege the identity of these third-

19   party agents, or their relationship with Wenner.  But in the Declarations supporting the Motion,

20   Wenner itself identifies two of these agents.  (Schneier Decl. Dkt. 19-1, ¶ 17 and Hass Decl. Dkt. 19-

21   7, ¶ 7.)  Moreover, the contract between Wenner and one of those agents demonstrates both that

22   Wenner controls the "manner and means" of the agent's telemarketing efforts on Wenner's behalf,

23

24

25   [5] *See, e.g., Satterfield*, 569 F.3d at 949; *Kazemi*, 2010 WL 963225, at *1; *Kramer*, 759 F. Supp. 2d at 1167.
     [6] Liability under the TCPA attached to not only transmitters, but also to advertisers who market their products using
26   unsolicited calls and text messages.  *See, e.g., Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 (D. Md. 2011);
     *Spillman v. Dominos Pizza, LLC*, No. 10-cv-349, 2011 WL 721498, at *3-4 (M.D. La. Feb. 22, 2011); *Charvat v.*
27   *Echostar Satellite, LLC*, 676 F. Supp. 2d 668, 673 (S.D. Ohio 2009); *United States v. Dish Network, LLC*, 667 F. Supp.
     2d 952, 962-63 (C.D. Ill. 2009).

28   

     P's Opposition to Def.'s Mot.
     to Dismiss or Transfer Venue                                    No. 11-cv-04648 EMC

including the words of the offer, and that the agent has the power to enter into contractual

relationships on behalf of Wenner. (Dkt. 19-7, ¶ 7, Ex. 1 § 3(a)-(b), 4(a)).  Both of these elements are

hallmarks of a principal-agency relationship.  Wenner cannot argue that Plaintiffs have failed to put it

on notice of an agency relationship, and then in the same brief produce the documents, referenced in

the Plaintiffs' Complaint, that establish such an agency relationship.

Even if the Court does not consider the information presented by Defendant, Plaintiffs still

adequately pled Wenner's liability for the transmission of text message spam.  Contrary to

Defendant's arguments, an agency relationship need not be pled with particularity in order for

liability to attach—this is especially true at the pleading stage.  The law in this Circuit, and in

California, allows agency to be pled generally.  As "a matter of law, allegations of agency, vicarious

liability, and/or *respondeat superior* are not required.  A person legally responsible for an act may be

alleged to have committed it without going into the theories which support that ultimate fact."

*Greenberg v. Sala*, 822 F.2d 882, 886 (9th Cir. 1987); *see Hernandez v. Hilltop Fin. Mortg., Inc.*, 622

F. Supp. 2d 842, 852-53 (N.D. Cal. 2007) ("Although the plaintiffs do not allege an agency

relationship between Countrywide and the other defendants in their complaint, it is not necessary for

a pleading to allege an agency relationship in order to survive a Rule 12(b)(6) motion."); *see also*

*Kiseskey v. Carpenters' Trust for So. Cal.*, 144 Cal. App. 3d 222, 230 ( 1983) (interpreting state law

of California and stating that "general allegation of agency is one of ultimate fact, sufficient against a

demurrer").

The facts pled in Plaintiffs' Complaint are sufficient even absent the names of the third-

parties who actually transmitted the text messages for Wenner.  *See Gibson v. United States*, 781 F.2d

1334, 1340 (9th Cir. 1986) (plaintiff is not expected "to plead his evidence" or specific factual details

in advance of discovery); *Wyeth v. Anchen Pharm.*, No. SACV06-386JVS (MLGx), 2006 WL

6103249, at *3 (C.D. Cal. Dec. 20, 2006) (plaintiffs need not plead particular facts constituting a claim with specificity).  The cases relied on by Defendant are inapposite, as they either involve allegations of fraud, which must be pled with heightened specificity under Fed. R. Civ. P. 9(b),[7] or cases at the summary judgment stage, where a factual record has already been developed.  *See Emery v. VISA Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (Ct. App. 2002).

Here, Plaintiffs amply allege facts which, taken as true, "plausibly suggest an entitlement to relief."  *Iqbal*, 129 S.Ct. at 1951.  Plaintiffs allege that Wenner has a "contractual relationship with several different agents" (dkt. 1, ¶ 14) who create leads through text messages, and that these same agents sold Defendant's products in response to such text message marketing (dkt. 1, ¶¶ 24-27).  Plaintiffs further connect Wenner Media to these third-party telemarketers through credit card charges for the Wenner magazine *US Weekly*, which were processed by Wenner's agents, and appeared on Plaintiffs' credit card statement.  (Dkt. 1, ¶ 27.)  Given these facts, it is plausible that the third-parties alleged in the Complaint acted as Wenner's agents.   Defendant's arguments to the contrary are little more than an attempt to have Plaintiffs prove their case at the pleading stages.  Because federal law does not require as much, the motion should be denied.

### 3.   Plaintiffs allege an injury-in-fact sufficient to satisfy Article III standing requirements

Defendant feebly attempts to escape TCPA liability by arguing that Plaintiffs fail to allege an injury sufficient to satisfy constitutional standing requirements.  (Dkt. 18, pp. 21-22.)  But as Wenner readily concedes, the TCPA does not require a plaintiff to plead that she was charged for receipt of the unauthorized message to state a claim.  *See* (Dkt. 18, p. 20, n.9); *see also Gutierrez v. Barclays*

---

[7] *See, e.g., Hawkins v. First Horizon Home Loans*, Civ. No. S-10-1876 FCD/GGH, 2010 WL 4823808, at **8-9 (E.D. Cal. Nov. 22, 2010) (discussing how Plaintiff's claims fail to meet the pleading standards of Fed. R. Civ. P. 9(b)); *Arias v. Capital One, N.A.*, No. C 10-1123 MHP, 2011 WL 835610, at *4 (N.D. Cal. Mar. 4, 2011) (discussing Plaintiff's claims of fraud, misrepresentation and deceit alleged through an agency relationship); *RPost Holdings, Inc. v. Trustifi Corp.*, No. CV 11-2118 PSG (SHx), 2011 WL 4802372, at *4 (C.D. Cal. Oct. 11, 2011) (Discussing plaintiff's claims of false advertising and stating that "the fact that Plaintiff is proceeding under an agency theory does not absolve Plaintiff of the Rule 9(b)'s requrement[s].").

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Group*, No. 10-cv-1012 DMS (BGS), 2011 WL 579238 (S.D Cal. Feb. 9, 2011).  Plaintiffs suffered a statutorily-recognized injury in the form of an invasion of their privacy when they received the unsolicited text message.  (Dkt. 1, ¶ 37(D).)  Plaintiffs not only state a claim under the TCPA, they also allege that they, and the class they seek to represent, "suffered actual damages by having to pay their respective wireless carriers for the text messages."  (Dkt. 1, ¶¶ 16, 42.)  These injuries to their legal rights amply support standing.

In order to satisfy Article III's "cases and controversies" requirement, *see* U.S. CONST., art. III, § 2, the person seeking to invoke the jurisdiction of the court must demonstrate that she "suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury." *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007).  The "'injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).[8] "Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 500.

In enacting the TCPA, Congress codified consumers' privacy interest with respect to accessing their telephones for commercial purposes.  The purposes of the TCPA, according to the legislative history, include "*protect[ing] the privacy interests* of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home."  S. Rep. No. 102-178, at 1, *reprinted in* 1991 U.S.C.C.A.N. 1968, 1968 (emphasis added).  The right to privacy, and the

---

[8] *See also* Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 SUFFOLK U. L. REV. 881, 885 (1983) ("Standing requires, as noted earlier, the allegation of some particularized injury to the individual plaintiff. But the legal injury is by definition no more than the violation of a legal right; and legal rights can be created by the legislature.").

8

invasion of that right, is well established on both the federal and state level.  The Constitution

protects a right to privacy, and invasions of that right are actionable injuries sufficient to confer

standing.  "In a line of cases … going back perhaps as far as *Union Pac. R. Co. v. Botsford*, 141 U.S.

250, 251 (1891), the Court has recognized that a right of personal privacy, or a guarantee of certain

areas or zones of privacy, does exist under the constitution."  *Roe v. Wade*, 410 U.S. 113, 152 (1973).

Likewise, The California Constitution explicitly recognizes a right to privacy, and provides redress

for invasion of that right.  *See Hill v. Nat'l Collegiate Athletic Assn.*, 865 P.2d 633, 644 (Cal. 1994)

(holding that "the Privacy [provision] in article I, section 1 of the California constitution creates a

right of action against private as well as government entities."); *Leonel v. Am. Airlines, Inc.*, 400 F.3d

702, 712 (9th Cir. 2005) (holding that a privacy claim under the California Constitutional requires no

showing of injury beyond the invasion itself).

Wenner's economic harm argument was rejected recently in *Gutierrez v. Barclays Group*,

2011 WL 579238 (S.D Cal. Feb. 9, 2011). The TCPA imposes no requirement that a plaintiff

demonstrate monetary harm due to an illegal call or text message; the privacy invasion is injury

sufficient to constitute an actionable offense. *See id.* at *5; *see also Warth*, 422 U.S. at 500.

Because the TCPA protects a privacy right, any violation of the TCPA violates the

consumer's right to privacy, and causes injury-in-fact.  By sending an illegal spam text message,

(Dkt. 1, ¶¶ 19-22), Defendant violated Plaintiffs' right to be free from such calls and their underlying

right to privacy.[9]

---

[9] As outlined above, Plaintiffs also allege an economic injury to themselves and the class they seek to represent. (Dkt.1, ¶¶ 16, 42.)  In addition to these injuries, Plaintiffs suffered a physical invasion of their property by receipt of the unauthorized text message spam, and could have stated a claim for trespass to chattels.  *See eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069 (N.D. Cal. 2000) (quoting *Thrifty-Tel v. Bezenek*, 46 Cal. App. 4th 1559, 1566-67 (1996)).

9

**B.  Plaintiffs State a Claim for Breach of Contract**

Under California law, a breach of contract action requires: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) breach by the defendant; and (4) resulting damages to the plaintiff.  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010).  Wenner does not challenge the existence of a contract relating to the Gift Card offer (the "Gift Card Contract"), or that the contract was breached when Plaintiff Hubbard and members of the Gift Card Class did not receive the Gift Cards as promised.  Rather, Wenner argues that it cannot be held liable for the breach because it was not a party to the agreement.  Wenner's argument fails for two independent reasons: (i) Wenner voluntarily accepted the benefits of the Gift Card Contract; and (ii) Wenner authorized its agent to act on behalf of Wenner and bind it to the agreement.  Accordingly, the Court should not dismiss Plaintiff's breach of contract claim.

**1.  Wenner is Bound Because it Accepted the Benefits of the Gift Card Contract**

Wenner obligated itself to perform under the Gift Card Contract—and is consequently liable for its breach—because it voluntarily accepted the benefits of the agreement.  It is a basic rule of California contract law that the "voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it."  Cal. Civ. Code § 1589.  As a result, a "person who accepts all of the benefits of [a] contract" may "be held liable for breach of that contract."  *Scripps Health v. Blue Cross & Blue Shield of Kan.*, Inc., No. 10-cv-2028 DMS RBB, 2011 WL 292142, at *2 (N.D. Cal. Mar. 29, 2011) (citing Cal. Civ. Code § 1589); *see also Recorded Picture Co. v. Nelson Entertainment, Inc.*, 53 Cal. App. 4th 350, 362, n. 6 (1997).

This principle holds true even when a party is not a signatory to the underlying contract.  For example, In *Harris v. Superior Court (Mirsaidi)*, 188 Cal. App. 3d 475, 478 (1986), the court held that a physician was bound by the arbitration provisions contained in a patient's contract with a health plan even though the physician was not a signatory to that contract.  The court found that the physician's voluntary acceptance of the benefit of receiving patients through their enrollment in the health plan bound him to accept the requirement of binding arbitration of disputes procured as a result of his clinic's participating in the health plan.  *Id.* at 479.  Because the physician "obtained

10

1    patients through enrollments in the Maxicare health plan," his acceptance of "this benefit necessarily

2    entailed acceptance of the agreement that members' claims would be subject to binding arbitration."

3    *Id.*

4         Like the defendant in *Harris*, Wenner here benefitted from the terms of the Gift Card

5    Contract, specifically using the Gift Card offer as a method to contact consumers anonymously and

6    still sell subscriptions to its magazines.  In particular, Plaintiffs allege that Wenner used its agents to

7    transmit SMS messages consumers' cell phones that encouraged recipients to call a toll-free

8    telephone number to receive a free gift card from a major retailer.  (Dkt. 1, ¶¶ 21, 45.)  Unbeknownst

9    to consumers, the toll-free number was operated by Wenner's agents, each of whom were trained to

10   deliver a script on behalf of Wenner designed to convince the consumer to subscribe to one of

11   Wenner's magazines.  (Dkt. 1, ¶¶ 24, 45.)  While consumers believed that the sole purpose of the

12   phone call was to secure the promised Gift Card, the true purpose of the text message and toll-free

13   number was to secure subscriptions to Wenner's magazines.  (Dkt. 1, ¶¶ 24-25.)  Said differently,

14   without the Gift Card offer and subsequent contract, Wenner and its agents would not have been

15   contacted by consumers and would not have had the opportunity to sell Wenner's magazines.

16   Accordingly, the Gift Card offer, as well as the resulting Gift Card Contract, existed to benefit

17   Wenner and increase its magazine subscriptions.

18        Wenner has offered no support for its position that it should receive the benefits of the Gift

19   Card Contract, but not be liable for its breach.  The Complaint sets forth allegations sufficient to

20   show that the Gift Card offer and Contract existed to benefit Wenner and to provide Wenner's agents

21   the opportunity to sell Wenner's magazines.  Under such circumstances, Wenner is bound by the

22   obligations of the agreement and liable for its breach.  Accordingly, Wenner's challenge to Plaintiff's

23   breach of contract claim should be rejected.

24        **2.   Wenner is Liable Under an Agency Theory**

25        The Complaint also establishes that Wenner's agent, who received toll-free phone calls at

26   Wenner's request and sold magazine subscriptions on its behalf, had the authority to and did in fact

27

28
P's Opposition to Def.'s Mot.
to Dismiss or Transfer Venue                                                   No. 11-cv-04648 EMC

bind Wenner to the Gift Card Contract.  Under California law, "[a]n agent may be authorized to do any acts which his principal might do . . ."  Cal. Civ. Code § 2304.  In addition, "[e]very act which, according to this Code, may be done by or to any person, may be done by or to the agent of such person for that purpose, unless a contrary intention clearly appears."  Cal. Civ. Code §§ 2304, 2305.  This includes the authority to negotiate and enter into contracts on behalf of the principal:

> The rule is that . . . whatever is said by an agent, either in the making of a contract for his principal, or at the time, and accompanying the performance of any act, within the scope of his authority, . . . of the particular contract or transaction in which he is then engaged, is, in legal effect, said by his principal, and admissible as evidence . . .

*Dart Indus., Inc. v. Commercial Union Ins. Co.*, 28 Cal. 4th 1059, 1077 (2002); *see also Jura v. Sunshine Biscuits, Inc.*, 118 Cal. App. 2d 442, 448-49 (1953).

In addition, an agency relationship may be informally created, with no particular words necessary, nor need for any consideration.  *See Malloy v. Fong*, 37 Cal. 2d 356, 372-73 (1951).  All that is required is conduct by each party manifesting acceptance of a relationship whereby one of them is to perform work for the other.  *Id.*  While authority to act as an agent arises by acceptance of the principal, no particular method of expression is essential, and appointment may be implied from the conduct of the parties.  *Id.*

Creation of agency also occurs when the principal ratifies the purportedly unauthorized act of the agent after-the-fact.  *See* Cal. Civ. Code § 2307; *see also Rakestraw v. Rodriguez*, 8 Cal. 3d 67, 74-75 (1972) (cross complainant held to ratify acts of cross-defendant where cross-complainant, whose name had been forged to obtain funds for her business, became aware of the forgery and elected not to rescind when she had the power to do so).  Where a principal accepts the benefits of the agent's acts—whether authorized or not—and acquiesces to the terms of an agreement entered by an agent, the principal is deemed to have ratified the agreement, and will be estopped from repudiating it.  *Higson v. Montgomery Ward & Co., Inc.*, 263 Cal. App. 2d 333, 342 (1968).

Here, Wenner does not deny that Plaintiff Hubbard entered into the Gift Card Contract with the party who disseminated the Gift Card offer.  Plaintiffs' Complaint, as well as documents

12

1  submitted by Wenner itself, establish that this party acted as Wenner's agent, operating solely under

2  Wenner's control and possessing the authority to bind Wenner to contracts while acting in that role.

3  Moreover, it is clear that Wenner benefited from the specific acts of its agent, and ratified the agent's

4  conduct when Wenner accepted the benefits under the Gift Card Contract.  Since Wenner accepted its

5  relationship with its agent, and accepted the benefits obtained through the agent's actions, it cannot

6  now deny the consequences of that relationship.  Accordingly, Wenner may also be liable for breach

7  of contract under an agency theory, and the Motion to Dismiss should thus be denied.

8       **C.  Plaintiffs Properly State a Claim Under the UCL**

9       The UCL is "sweeping, embracing anything that can properly be called a business practice

10  and at the same time is forbidden by law."  *Cel-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.*, 20

11  Cal. 4th 163, 180 (1999); *see also In re First Alliance Mortg. Co.*, 471 F.3d 977, 995-96 (9th Cir.

12  2006); *Ferrington v. McAfee, Inc.*, No. 10-cv-1455 LHK, 2010 WL 3910169, at *7 (N.D. Cal. Oct. 5,

13  2010) (the UCL's "standard for wrongful business conduct is intentionally broad, allowing courts

14  maximum discretion to prohibit new schemes of fraud.")  (internal quotations omitted).  The UCL

15  prohibits, and provides civil remedies for, unfair competition, which it defines as "any unlawful,

16  unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §§ 17200, *et seq.*  Consistent

17  with its sweeping purpose, the UCL "provide[s] courts with broad equitable powers to remedy

18  violations[.]"  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320-21 (2011) (citing *Bank of the*

19  *West v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992)); *ABC Int'l Traders, Inc. v. Matsushita Elec.*

20  *Corp.* 14 Cal. 4th 1247, 1270 (1997)) (internal citations and quotations omitted).  Typically, the

21  question of whether a business practice is unlawful, unfair or fraudulent under the UCL is "one of

22  fact which requires a review of the evidence from both parties."  *McKell v. Washington Mut., Inc.*,

23  142 Cal. App. 4th 1457, 1472 (2006).

24       Plaintiffs allege that Wenner's inducing consumers to pay for Gift Cards that Wenner and its

25  agents never intended to send was an unlawful, fraudulent, and unfair business practice.  (Dkt. 1,

26  ¶¶ 48-60.)  Wenner counters by reasserting that Plaintiffs lack standing, while also contending that

27

28

the Complaint does not attribute any unlawful conduct to Wenner and fails to meet the pleading requirements of Fed. R. Civ. P. 9(b).  As explained below, each of these arguments fail, and Plaintiffs have properly stated a claim under each prong of the UCL on behalf of the Gift Card Class.

### 1. Plaintiffs Have Standing Under the UCL Because They Have Alleged Economic Injury Resulting from the Unlawful Business Practice

Wenner first recasts its standing argument in the context of Section 17200, mistakenly arguing that the UCL requires Plaintiffs to more specifically "connect their loss" of money to Wenner.   A plaintiff has standing to assert a UCL claim if the complaint (1) alleges a loss of money or property, *i.e.*, some form of economic injury, and (2) shows that the economic injury was the result of "the unfair business practice or false advertising that is the gravamen of the claim."  *Kwikset*, 51 Cal. 4th at 749.  "There are innumerable ways in which economic injury from unfair competition may be shown," including "be[ing] deprived of money or property to which he or she has a cognizable claim."  *Id.* at 751.  Moreover, a plaintiff need only connect the injury suffered to the *unlawful business practice* giving rise to the claim, not to each particular actor participating in the unlawful practice.  *Id.*; *Sandry v. First Franklin Fin. Corp.*, 10-cv-1923, OWW SKO, 2011 WL 1748613, at *5 (E.D. Cal. May 6, 2011) (standing exists for a "person who has suffered injury in fact and has lost money or property as a *result of the unfair competition*") (emphasis added).

Wenner does not (and cannot) contend that Plaintiffs fail to allege economic injury, as the Complaint establishes that Plaintiffs and members of the Gift Card Class lost money by paying a $2.50 "shipping fee" for Gift Cards that they never received.  Rather, Wenner argues that Plaintiffs fail to attribute their economic injury specifically to Wenner, as opposed to the "entity that charged [Plaintiff] Hubbard for the Gift Card."  Wenner's argument contradicts the well-pleaded allegations in the Complaint, and misconstrues what is required to demonstrate standing under the UCL.

As explained above, Plaintiffs need only allege that their economic injury was "a result of" the allegedly unlawful business practice.  In this case, the unlawful business practice consisted of a fraudulent offer of a nonexistent gift card in exchange for consumers' payment of a $2.50 "shipping fee."  Plaintiffs expressly allege their loss of $2.50—the economic injury—was the result of their

14

1  attempt to accept the fraudulent Gift Card offer—the unlawful business practice.  (Dkt. 1, ¶¶ 57, 59.)

2  While nothing more is required to demonstrate standing under the UCL, Plaintiffs further detail

3  Wenner's involvement in the unlawful business practice, including that Wenner contracted with

4  agents to send the initial text message and used the promise of the Gift Card as a pretext for obtaining

5  subscribers to Wenner's magazines.  (Dkt 1, ¶¶ 24, 56.)  Accordingly, Plaintiffs readily meet the

6  UCL's particularized standing requirements.

7  **2.  Plaintiffs' Claims are Not Premised on Vicarious Liability**

8  Wenner next argues that it cannot be held "vicariously liable" for a violation of the UCL.

9  While it is true that a UCL claim may be predicated solely on vicarious liability, Wenner's argument

10  is irrelevant because Plaintiffs' claims are based solely on Wenner's own conduct in participating in

11  and effectuating the unlawful Gift Card scheme.  As Plaintiffs expressly allege, Wenner contracted

12  with one or more agents to transmit text messages to consumers that were designed solely to induce

13  the recipients to call a toll-free number operated by Wenner or agents under Wenner's control.  (Dkt.

14  1, ¶¶ 21-24.)  Upon receiving toll-free calls from consumers intending to redeem the Gift Card offer,

15  Wenner and its agents systematically used the Gift Card offer solely as a pretext to sell subscriptions

16  to Wenner's magazines.  (Dkt. 1, ¶¶ 24, 55-56.)  Indeed, Wenner and its agents never intended to

17  provide any of the promised Gift Cards; the only product available to callers was Wenner's own

18  magazines.  (Dkt. 1, ¶¶ 24, 55-56.)  Accordingly, Wenner unquestionably participated in, and was the

19  primary beneficiary of, the unlawful business practice giving rise to Plaintiffs' Complaint.  It follows

20  that Wenner's liability is not premised on the conduct of another party, but rather is solely the result

21  of Wenner's own participation in the unlawful practice.

22  Even though Wenner was not the party who transmitted the unlawful Gift Card offer and

23  processed payment for the "shipping fee," Wenner is still liable under the UCL to the extent that it

24  "aided and abetted the principal violator."  *Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090,

25  1098 (N.D. Cal. 2008); *see also Brooks v. ComUnity Lending, Inc.*, No. 07-cv-5-4501 JF PVT, 2010

26  WL 2680265 (N.D. Cal. July 6, 2010); *Quezada v. Loan Ctr. Of Cal., Inc.*, No. 08-cv-177 WBS

27

28

15

1    KJM, 2008 WL 5100241 (E.D. Cal. Nov. 26, 2008).   A "defendant aids and abets the commission of

2    an intentional tort if the person knows the other's conduct constitutes a breach of duty and gives

3    substantial assistance or encouragement to the other to so act." *Quezada*, 2008 WL 5100241, at *6

4    (finding that plaintiff stated a "cognizable UCL claim under an aiding-and-abetting theory") (quoting

5    *Shulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 93 (2007)).  A complaint need not specifically

6    allege that a defendant "aided and abetted" in the UCL violation. *Valazquez v. GMAC Mortg. Corp.*,

7    605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).  Rather, it is sufficient if a complaint demonstrates that

8    the defendant provided "substantial assistance" and had "actual knowledge" of the UCL violation.

9    *Id.*

10        Here, Plaintiff has undoubtedly alleged sufficient facts state a UCL claim against Wenner

11    under an "aiding and abetting" theory.  Plaintiff alleges that Wenner had "actual knowledge" of the

12    initial unauthorized text message, as well as the use of the Gift Card offer as a pretext to soliciting

13    Wenner magazine subscriptions.  (Dkt. 1, ¶¶ 24-25, 52-53.)  Moreover, Wenner provided "substantial

14    assistance" by offering commissions to its agent for each magazine subscription sold, and by further

15    providing a script and instructions designed to assist its agent in completing such sales.  (*See* Hass

16    Decl. Dkt. 19-7, ¶ 7, Ex. 1.)  Wenner cannot avoid liability under the UCL by recasting Plaintiffs'

17    allegations and theory as one of vicarious liability.

18        **3.   Plaintiffs State a Claim Under Each Prong of the UCL**

19        While a plaintiff need only satisfy a single UCL "prong" to state a claim, Plaintiffs have

20    sufficiently alleged that the offer of "free" Gift Cards by Wenner and its agents constitutes an

21    unlawful, unfair, and fraudulent business practice.

22        **i.  Only Allegations Sounding in Fraud Must to Pled With Particularity**

23        In challenging the substance of Plaintiffs' UCL claim, Wenner broadly asserts that all of

24    Plaintiffs' underlying allegations must comply with the heightened pleading standards of Rule 9(b).

25    However, "fraud is not a necessary element of a successful UCL claim," and Rule 9(b)'s particularity

26    requirements apply only to specific allegations of fraud. *Marolda v. Symantec Corp.*, 672 F. Supp.

27

28

P's Opposition to Def.'s Mot.
to Dismiss or Transfer Venue                                                     No. 11-cv-04648 EMC

2d 992, 1003-04 (N.D. Cal. 2009).  As a result, where a plaintiff alleges "some fraudulent and some non-fraudulent conduct . . . only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003).  In this case, Plaintiffs allege both fraudulent conduct (*e.g.* Defendant's intentional misrepresentations and omissions regarding the provision of free Gift Cards) as well as unfair or unlawful conduct (*e.g.* Defendant's violation of the TCPA and refusal send or cause to be sent the Gift Cards after receiving payment from consumers).  Accordingly, Wenner's claim that Plaintiffs' UCL claim sounds entirely in fraud is demonstrably false, and only those allegations of fraudulent conduct must meet the requirements of Rule 9(b).

### ii.  Plaintiffs have alleged that Wenner acted "Unlawfully" under the UCL

"Violations of federal as well as state and local law may serve as the predicate for an unlawful practice claim under section 17200."  *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 676 (2009).  As demonstrated throughout this Opposition, Plaintiffs have sufficiently pled statutory causes of action under the TCPA and California False Advertising Law, as well as a common law claim for breach of contract.  Accordingly, Plaintiff's claim should stand under the "Unlawful" prong of the UCL.

### iii.  Plaintiffs Have Stated a Claim Under the UCL "Unfair" Prong

Wenner's sole challenge to Plaintiff's claim under the UCL's "unfair" prong is that the allegations again fail for want of particularity under Rule 9(b).  But as demonstrated above, Plaintiffs were not required to plead their claims related to Wenner's unfair business practices—which do not sound in fraud—with the same specificity.  Rather, Plaintiffs' allegations are subject to the notice pleading standards of Rule 8(a), and they readily state a claim under the UCL's "unfair" prong.

"Unfairness" in UCL consumer cases has the same meaning as that used in 15 U.S.C. § 45(n) and § 5 of the Federal Trade Commission Act.  *Camacho v. Auto. Club of So. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006).  Consistent with Section 5, a business practice is "unfair" under the UCL if the following factors are present: (1) substantial consumer injury; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not have been reasonably avoided by the consumer."  *Camacho*, 142 Cal. App. 4th at 1403; *see also Shroyer v. New*

17

1  *Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) ("Unfair simply means any

2  practice whose harm to the victim outweighs its benefits").

3     Plaintiffs have alleged that Wenner and its agents' intentional failure to provide Gift Cards as

4  promised caused them concrete, actual harm—in the form of actual money paid for "shipping costs,"

5  as well as the dollar amount of the unsent Gift Card. (Dkt. 1, ¶¶ 48, 59.) Plaintiffs have not

6  alleged—and Wenner has failed to identify—any countervailing benefit that flows from the false

7  promise of free Gift Cards and the collection of fraudulent "shipping fees." Finally, the Complaint

8  shows that Plaintiffs and the Gift Card Class could not have reasonably avoided their injuries, as

9  consumers were never informed and had no reason to assume that Wenner and its agents never

10 intended to send the promised Gift Cards or use the Shipping Fee as represented to consumers.

11 Accordingly, Plaintiffs have properly pled a UCL "unfairness" claim.

12          **iv.  Plaintiffs have alleged that Wenner acted "Fraudulently" under the UCL**

13     Similarly, Plaintiffs have alleged specific, particularized facts sufficient to state a claim under

14 the "Fraudulent" prong of the UCL. Despite this, Wenner concentrates it attack on hypothetical facts

15 that Plaintiffs could have alleged, while ignoring the well-pleaded facts that Plaintiffs actually allege,

16 and which are more than sufficient to put Wenner on notice of the alleged fraudulent conduct.

17     A complaint satisfies Rule 9(b) if it alleges "the who, what, when, where, and how of the

18 alleged fraudulent conduct" and "set[s] forth an explanation as to why [a] statement or omission

19 complained of was false and misleading." *Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102, 1112 (N.D. Cal.

20 2010). The purpose of Rule 9(b) "is to ensure that defendants accused of the conduct specified have

21 adequate notice of what they are alleged to have done, so that they may defend against the

22 accusations." *Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1995).

23     However, the "UCL standard for fraudulent business practices is more easily met than its

24 common law counterpart." *In re Actimmune Marketing Litig.*, No. 08-cv-2376, 2009 WL 3740648, at

25 *8 (N.D. Cal. Nov. 6, 2009). "A [common law] fraudulent deception must be actually false, known

26 to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of

27 these elements are required to state a claim for injunctive relief under the UCL." *In re Tobacco II*

28

18

1   *Cases*, 46 Cal. 4th 298, 312 (2009).  An UCL plaintiff need merely allege that "members of the

2   public are likely to be deceived" by a defendant's conduct.  *Committee on Children's Television, Inc.*

3   *v. General Foods Corp.*, 35 Cal. 3d 197, 211-212 (1983) (noting also that a "plaintiff need not plead

4   the exact language of every deceptive statement; it is sufficient for plaintiff to describe a scheme to

5   mislead customers, and allege that each misrepresentation to each customer conforms to that

6   scheme.").

7          Plaintiff's fraud-based allegations are pled with sufficient particularity.  Plaintiffs specifically

8   allege that Wenner and its agents (who) made statements within text message advertisements

9   transmitted to consumers, as well as verbally in phone calls with consumers, (where) that they would

10  receive Gift Cards to a discount retail store (what).  (Dkt. 1, ¶¶ 18-25.)  The Complaint further

11  identifies the date on which Plaintiff Hubbard received the text message containing the fraudulent

12  Gift Card offer (when), and explains in detail how Wenner and its agents effectuated the fraudulent

13  Gift Card offer and subsequent scheme to sell Wenner magazine subscriptions (how).  (Dkt. 1, ¶¶ 19,

14  24-25, 55-56.)  Wenner cannot credibly assert that it does not understand which statements and

15  conduct that Plaintiffs are challenging, which is the overarching purpose of Rule 9(b)'s requirements.

16         Wenner's laundry list of supposedly missing facts is facile.  The detailed factual allegations

17  that Wenner argues should be required—including "where or how any alleged collusion between

18  Wenner and its agent took place" and the full and complete content of the text messages transmitted

19  to consumers—are facts uniquely within Wenner's knowledge, and are certainly not facts required to

20  be alleged at the pleading stage.  Wenner identifies these hypothetical facts solely to draw attention

21  away from the particularized facts that Plaintiffs actually allege, and which are more than sufficient

22  to put Wenner on notice of its alleged fraudulent conduct.

23         Finally, Wenner's suggestion that Plaintiffs must allege facts that "support a finding of

24  scienter" lacks merit.  The "UCL does not require [a finding of] scienter." *Mazza v. American Honda*

25  *Motor Co.*, 254 F.R.D. 610, 621 (C.D. Cal. 2008).  Plaintiff need not allege facts relating to Wenner's

26  state of mind or its "purpose" in supporting the fraudulent Gift Card offer.  Plaintiffs have

27  sufficiently demonstrated that "members of the public [were] likely to be deceived" by Wenner's

28

19

1   fraudulent conduct.  *Committee on Children's Television, Inc.*, 35 Cal. 3d at 211-212.  For these

2   reasons, Plaintiffs' allegations are sufficient to state a claim under the UCL's "Fraudulent" prong.

3       **4.   The Complaint States a Claim Under the California False Advertising Law**

4           Wenner challenges Plaintiffs' claim under California's False Advertising Law ("FAL"), Cal.

5   Bus. & Prof. Code § 17500, because the Complaint does not allege that Wenner "disseminated" the

6   false advertisement in question, and that the underlying allegations fail to meet the pleading

7   requirements of Rule 9(b).  For the same reasons discussed above, this argument also fails in the

8   context of the FAL.

9           The FAL makes it "unlawful for any person, firm, corporation or association . . . to induce the

10  public to enter into any obligation" through the use of any untrue or misleading statement "which is

11  known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

12  Cal. Bus. & Prof. Code § 17500.  The FAL is equally as comprehensive as the UCL, within the

13  narrower field of false and misleading advertising.  *See Kwikset Corp.*, 51 Cal. 4th at 310 (citing

14  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002).  Thus, to state a claim under the FAL, a plaintiff

15  must allege (i) that a defendant made or disseminated untrue or misleading statements, (ii) that were

16  likely to deceive a reasonable consumer, (iii) in an effort to induce that consumer to enter into an

17  obligation that they would not have agreed to absent such untrue or misleading statements.  *Mazza v.*

18  *American Honda Motor Co.*, 254 F.R.D. 610 (C.D. Cal. 2008).  However, actual deception or

19  confusion caused by the misleading statements is not required.  *Id.*; *see also Brockey v. Moore*, 107

20  Cal. App. 4th 86 (2003) (statutes prohibiting false advertising encompass not only those

21  advertisements which have deceived because they are untrue, but also those perfectly true statements

22  couched in such a manner that they are likely to mislead or deceive consumers, such as by failure to

23  disclose other relevant information).   In determining whether a statement is misleading under the

24  FAL, "the primary evidence in a false advertising case is the advertising itself." *Brockey*, 107 Cal.

25  App. 4th at 100.

26

27

28

P's Opposition to Def.'s Mot.
to Dismiss or Transfer Venue

No. 11-cv-04648 EMC

Here, Plaintiffs allege that Wenner made and disseminated—through its own acts as well as through its authorized agents—untrue and misleading statements about the provision of free Gift Cards to consumers who contacted a toll-free number. (Dkt. 1, ¶ 62.) The Complaint further describes how these statements were likely to mislead a consumer acting reasonably under the circumstances (Dkt. 1, ¶ 63), and shows how Plaintiff Hubbard herself was actually misled into calling Wenner's toll-free number and paying a Shipping Fee for a Gift Card that Wenner and its agents never intended to send. (Dkt. 1, ¶¶ 65-66.) Moreover, and as described in detail herein, Plaintiffs repeatedly and explicitly detail Wenner's participation in disseminating and authorizing the fraudulent statements identified in the Complaint. (Dkt. 1, ¶¶ 18, 24-25.) Once again, Wenner cannot seriously contend that the Complaint lacks sufficient specificity to put it on notice of the claims against it, as well as Wenner's role in disseminating the fraudulent statements. Accordingly, Wenner's challenge to Plaintiffs' FAL claim is similarly without merit.

## II.   TRANSFER OF THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK IS BOTH IMPOSSIBLE AND IMPROPER

Wenner also seeks transfer of this action to the Southern District of New York (S.D.N.Y.) pursuant to 28 U.S.C. § 1404(a). Wenner's argument fails both because the proposed transferee court lacks jurisdiction, and because venue is more appropriate in this Court.

### A. Transfer of venue should be denied because the S.D.N.Y. lacks subject matter jurisdiction over this case.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The transferee court must both be a proper venue and have subject matter jurisdiction. *See Benson v. JPMorgan Chase Bank, N.A.*, Case Nos. C-09-5272 EMC, C-09-5560 EMC, 2010 WL 1445532, at *5 (N.D. Cal. Apr. 7, 2010). The Southern District of New York lacks subject matter jurisdiction over this case, so the action could not have been brought there, nor can it be transferred there.

1    In *Holster v. Gatco, Inc.*, 485 F. Supp. 2d 179 (E.D.N.Y. 2007), the New York district court

2    dismissed a TCPA class action on the basis that a New York state statute, N.Y. C.P.L.R. § 901(b),

3    which prohibits class actions in cases seeking a penalty, precluded TCPA class actions in New York

4    federal court premised on diversity jurisdiction. *Id*. at 185-86.  Because the plaintiff in that case

5    could not bring a TCPA class action, the court found that dismissal was required due to lack of

6    subject matter jurisdiction, since the individual plaintiff could not otherwise meet the amount in

7    controversy requirement for diversity jurisdiction. *Id*. at 186.  The Second Circuit affirmed, and the

8    U.S. Supreme Court, addressing both *Holster* and a related case, *Bonime v. Avaya*, 547 F.3d 497 (2d

9    Cir. 2008), vacated and remanded the case for reconsideration in light of its opinion in *Shady Grove*

10   *Orthopedic Associates, P.A. v. Allstate Ins. Co.*, --U.S.--, 130 S.Ct. 1431 (2010).  Upon

11   reconsideration, the Second Circuit analyzed the Supreme Court's decision in *Shady Grove* and then

12   affirmed the district court's dismissal of the TCPA class action for lack of subject matter jurisdiction.

13   *See Holster*, 618 F.3d at 217-18.

14        Because New York law prohibits class actions in TCPA cases, and because the plaintiffs'

15   individual claims plainly do not support diversity jurisdiction, S.D.N.Y. lacks subject matter

16   jurisdiction over any TCPA class action.  This case could not have been brought there, requiring

17   denial of Wenner's transfer motion.  *See Arvidson v. Reynolds Metals Co.*, 107 F. Supp. 51, 52 (W.D.

18   Wash. 1952) (denying transfer under § 1404(a) because the transferee court lacked subject matter

19   jurisdiction).

20   **B.  Even under a traditional "convenience and interest-of-justice" analysis, transfer of
      this case is improper**

21

22        Because the proposed transferee court lacks subject matter jurisdiction, the "convenience and

23   interest-of-justice factors" are irrelevant to the § 1404(a) analysis in this case.  Even if this Court

24   considers those other factors, their application requires denial of the transfer motion.

25        When a court evaluates a § 1404(a) motion, the moving party has the burden to "make a

26   strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  *See Decker*

27   *Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *see also Mathis v. County*

28

22

1  *of Lyon*, No. 2:07-CV-00628-KJD-GWF, 2007 WL 3230142, at *1 (D. Nev. Oct. 24, 2007) ("The

2  plaintiff's choice of forum is entitled to paramount consideration and the moving party must *show*

3  that a balancing of interest weighs *heavily* in favor of transfer." (internal quotations and citations

4  omitted) (emphasis added).  The transfer factors militate against transfer in this case, and Wenner has

5  failed to meet its burden of establishing otherwise.

6       **1. Plaintiffs' Choice of Forum**

7       When a court evaluates a § 1404(a) motion, the plaintiffs' choice of forum is typically entitled

8  to "paramount consideration."  *See Mathis*, 2007 WL 3230142, at *1; *see also Getz v. Boeing Co.*,

9  547 F. Supp. 2d 1080, 1082 (N.D. Cal. 2008) ("[U]nless the balance of the § 1404(a) factors is

10  *strongly* in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed."

11  (internal quotations and citations omitted)(emphasis added).  While the deference given to a

12  plaintiff's choice of forum may be slightly diluted when the plaintiff is representing a national class

13  in a class action lawsuit (Dkt. 18, p. 19), it is still entitled to deference.  *See, e.g., Holliday v.*

14  *Lifestyle, Inc.*, No. C-09-4995-RS, 2010 WL 3910143, at *6 (N.D. Cal. Oct. 5, 2010).[10]

15       Wenner even concedes that courts in this District "have sometimes found the desire to

16  represent a California subclass [as Plaintiffs do here] tips the balance in class action plaintiffs' favor."

17  (Dkt. 18, p. 19.)  Wenner then makes the erroneous assumption that "none of the operative facts"

18  took place in California.  *Id*.  As alleged in the Complaint, however, the text message calls made were

19  made from a phone number in this District, the Defendant is a resident of this District for purposes of

20  venue, and the Plaintiffs received the offending message in this District.  *See Holliday*, 2010 WL

21  3910143 at *6 (denying transfer of a class action and noting that certain operative facts occurred in

22  the forum and that the California subclass advances claims grounded upon California law).

23       Wenner then argues, meritlessly, that Plaintiffs are engaged in forum shopping.  Plaintiffs'

24  decision to litigate in this forum was not a result of any forum shopping.  Plaintiffs did not initiate

25

26  ─────────────────
   [10] The cases cited by Wenner acknowledge as such.  *See, e.g., Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (stating

27  that, while "great weight" is generally accorded plaintiff's choice of forum, the plaintiff's choice of forum is simply given
   "less weight" when the plaintiff represents a national class).

28                                             23

1   any lawsuit in the Northern District of Illinois, and they were never parties to the *Schrock* matter

2   previously pending there.  Plaintiffs initially attempted to bring this case in the Northern District of

3   Illinois, to maintain the continuity of the *Schrock* matter.  Wenner opposed that Motion, and

4   moreover, agreed to the dismissal of the Schrock case despite knowing that the Plaintiffs would file

5   this suit thereafter.[11]

6         Moreover, the instant case is simply a different case than *Schrock*, involving different

7   plaintiffs, different California state law claims, an additional California Subclass and an alleged text

8   message sent from a different phone number and, apparently, a different telemarketer.  Plaintiffs'

9   decision to sue in this District is due to the fact that they are both residents of this District, (dkt. 1, ¶

10   6), the unauthorized text message call they each received was sent from a San Mateo and Santa Clara

11   County area code, (dkt. 1, ¶ 20), and Wenner is itself a resident of this District (dkt. 1, ¶ 9).  The

12   cases cited by Defendant do not support a finding to the contrary.  *See, e.g., Royal Queentex*

13   *Enterprises v. Sara Lee Corp.,* C-99-4787 MJJ, 2000 WL 246599, at *3-4 (N.D. Cal. Mar. 1, 2000)

14   (rejecting defendant's suggestion that the plaintiff had engaged in forum shopping and stating that the

15   plaintiff's choice of forum "will be accorded proper deference.")[12]

16         *Italian Colors Rest. v. American Express Co.*, No. C-03-3719-SI, 2003 WL 22682482 (N.D.

17   Cal. Nov. 10, 2003), is readily distinguishable.  In that case, the court's forum shopping concerns had

18   nothing to do with the plaintiffs' decision to file suit in California after voluntarily dismissing a

19   similar suit in New York, a strategy that the court actually found to be perfectly reasonable.  *Id*. at *4.

20   Rather, the court's forum shopping concerns were based <u>entirely</u> on the fact that the plaintiffs had

21   filed two identical cases in two different California district courts.  *Id*.  No such fact is at issue in the

22   instant case.  Here, Plaintiffs did not file multiple lawsuits, and there are not multiple lawsuits

23   pending.  Plaintiffs were never even made parties to the previous *Schrock* lawsuit, which is no longer

24

25   [11]  *See* Ochoa Decl. ¶ 2, Ex. A, p. 5-6.

26   [12]  *Wilson v. City of San Jose*, 111 F.3d 688 (9th Cir. 1997), is distinguishable because it involved a materially different fact pattern where the plaintiffs voluntarily dismissed an action that had been removed to federal court at a time when a similar lawsuit involving the same defendant was pending in a different district.  Importantly, the Ninth Circuit <u>rejected</u>

27   the suggestion that the plaintiffs had engaged in any forum shopping there.  *Id*. at 694.

28
P's Opposition to Def.'s Mot.
to Dismiss or Transfer Venue                                                          No. 11-cv-04648 EMC

1    pending and was not pending when Plaintiffs filed their lawsuit in this District.[13]  The Northern

2    District of California was simply not Plaintiffs' "second" choice of forum and Wenner's authority on

3    that point misses the mark.  *See, e.g., Glaxo Group Limited v. Genentech, Inc.*, No. C-10-00675-JSW,

4    2010 WL 1445666, at *4 (N.D. Cal. Apr. 12, 2010) (the court noted that the plaintiff, a foreign

5    corporation, had originally filed suit in Florida but then dismissed that case and re-filed in the

6    Northern District of California in order to avoid the imminent transfer to the Central District of

7    California.)

8              **2.  Convenience of the Parties**

9              Wenner acknowledges that a transfer of this case would be inconvenient for the Plaintiffs but

10   attempts to disregard that fact with two assertions: (i) that Plaintiffs' first choice of forum was the

11   Northern District of Illinois, and (ii) that the inconvenience to Wenner in having to litigate in

12   California is somehow greater than the inconvenience to the Plaintiffs in having to litigate in New

13   York.  Neither assertion has any merit.

14             Wenner's suggestion that the Plaintiffs' inconvenience should be disregarded because their

15   "first choice" of forum was the Northern District of Illinois is rather absurd.  Plaintiffs never filed suit

16   in the Northern District of Illinois and were not parties to the *Schrock* case.  Rather, the *Schrock* case

17   was dismissed (as agreed by Wenner), and Plaintiffs – residents of this District – chose to file a

18   separate lawsuit (with different claims and a California subclass) in this District.  Even if it were

19   relevant that Plaintiffs were willing to become involved in the *Schrock* case while pending in the

20   Northern District of Illinois, that willingness does not change the fact that New York would be

21   substantially more burdensome to Plaintiffs than litigating in this District, where both Plaintiffs

22   _____

23   [13] Likewise, in *Foster v. Nationwide Mut. Ins. Co.*, No. C-07-04928-SI, 2007 WL 4410408, at *3 (N.D. Cal. Dec. 14, 2007), the court gave no deference to the plaintiffs' choice of forum because the named plaintiffs did not reside in the District and the court inferred that filing suit in the Northern District of California was, thus, a result of forum shopping. *Id.*  In the instant case, both Plaintiffs reside in this District.  In *Walker v. Discover Fin. Servs.*, No. C-10-3013-SI, 2010 WL 4269193 (N.D. Cal. Oct. 25, 2010), the court gave no deference to plaintiffs' choice of forum because the named plaintiffs had filed two other "virtually identical" suits in two other districts.  *Id.* at *3.  Here, the named Plaintiffs were not parties to the *Schrock* matter and, regardless, that case was not pending when Plaintiffs filed the instant lawsuit. Further, the instant case is not the same lawsuit as *Schrock*, as the Plaintiffs are different and are seeking different and additional state law claims on behalf of a California subclass.  Finally, in *Walker*, the court noted that 9 of the 11 plaintiffs involved in that case lived outside California, *id.* at *3, as opposed to the instant case where the only named Plaintiffs reside in this District.

28

25

actually reside and where Wenner does business.  And the S.D.N.Y could not hear this case in the first place.

Wenner also states that there is "nothing to indicate that California plaintiffs will predominate in this class." (Dkt. 18, p. 21.)  This is false.  First, California is likely to have a significantly greater number of class members than New York or any other state.  This is true not only because California is more populous generally, but also because the phone number from which the unauthorized text messages were sent had a "650" area code – an area code that includes San Mateo and Santa Clara Counties.  (Dkt. 1, ¶ 21.)  Additionally, Plaintiffs seek to represent a California-only subclass in two of the four counts in the Complaint.  All putative California subclass members reside in California in a lawsuit premised on an unauthorized text message call made from a California number.

Finally, Wenner cannot complain about any inconvenience in having to litigate this case in California, when Wenner will not actually have to come to California for any discovery.  Any depositions of Wenner employees will likely be conducted at the location of the deponents unless Wenner chooses to have such depositions conducted in its Los Angeles offices.  Consequently, this factor tips in favor of Plaintiffs and against transfer, as Wenner is seeking merely to shift the burden from itself onto Plaintiffs.  *See Royal Queentex*, 2000 WL 246599 at *6.

### 3.  Convenience of the Witnesses and Ease of Access to the Evidence

For this factor, Wenner's primary argument is that the S.D.N.Y. would be more convenient for more witnesses.  This is misleading.  First, Wenner states that its own witnesses are all located in New York. (Dkt. 18, p. 21.)  But the location of *party* witnesses is not the relevant focus—even Wenner concedes that the "convenience of non-party witnesses is generally more important than that of party witnesses because party witnesses can be compelled to testify regardless of forum." (Dkt. 18, p. 22.)  And while Wenner's corporate party witnesses are located in New York, Plaintiffs – individual consumers – are most certainly located in this District.

With respect to non-party witnesses, Wenner asserts that it is aware of no non-party witnesses located in California. (Dkt. 18, p. 22.)  This assertion is misguided for two reasons: first, any

26

1   depositions of non-party witnesses would occur at the location of the witnesses (or as otherwise

2   agreed) regardless of where the case proceeds.  *See SMI-Owen Steel Co., Inc. v. St. Paul Fire &*

3   *Marine Ins. Co.*, 113 F. Supp. 2d 1101, 1105 (S.D. Tex. 2000) (denying transfer and stating that all

4   depositions could be taken where the witnesses were located); *see also Fausto v. Credigy Services*

5   *Corp.*, 251 F.R.D. 427, 429 (N.D. Cal. 2008) (stating that there is a presumption that a deposition will

6   take place in the district of the deponent's residence and that corporate deponents are typically

7   deposed at the corporation's principal place of business).  While Wenner may not be aware of any

8   non-party witnesses located in California, it cannot say there are no such witnesses.  The fact that the

9   text messages were sent from a California phone number suggests that they were sent from California

10  (this District, in fact), which further suggests that the sender of the message may be located in

11  California.  This fact weighs in favor of denying transfer.

12          To the extent that Wenner is referring to physical sources of proof, such as records and

13  documents, it is Wenner's burden to show with particularity the location, difficulty of transportation,

14  and the importance of such items.  *See Bohara v. Backus Hosp. Medical Benefit Plan*, 390 F. Supp.

15  2d 957, 963 (C.D. Cal. 2005); *see also Kida Western Holdings, LLC v. Mercedes-Benz of Laguna*

16  *Niguel*, No. 207-cv-00523-LRH-RAM, 2008 WL 217043, at *4 (D. Nev. Jan. 18, 2008) ("[M]uch of

17  the evidence Defendants cite is easily transported to [this District] and Defendants have not shown

18  that they would be significantly burdened by transporting the documents. . . .  [B]ecause this evidence

19  is easily transferable, Defendants have not met their burden in light of other factors.").  Wenner does

20  not identify any documents or records that would be too burdensome to transport to California.  This

21  case does not involve significant physical evidence or the need to inspect a physical location.  Rather,

22  the nontestimonial evidence in this case will be documents, most of which are inherently electronic,

23  cautioning against transfer.  *See Royal Queentex*, 2000 WL 246599 at *7 ("Absent any other grounds

24  for transfer, the fact that records are located in a particular district is not itself sufficient to support a

25  motion for transfer"); *Gonzales v. Infosys, Ltd.*, No. C-09-04112-MHP, 2010 WL 1854146, at *8

26  (N.D. Cal. May 6, 2010) (where most of "the relevant documents are in an electronic database,

27

28

P's Opposition to Def.'s Mot.
to Dismiss or Transfer Venue                                                          No. 11-cv-04648 EMC

[defendant] cannot suggest that it would be inconvenient to litigate [in a different state] based on the location of documentary evidence.")  Accordingly, this factor does not support transfer.[14]

### 4. Familiarity of Each Forum with the Applicable Law

While Wenner does not attempt to argue that New York courts are more familiar with TCPA class actions, or with application of California's UCL, this factor is not "neutral."  California federal courts have significantly greater experience with both TCPA actions and actions under California law than the Southern District of New York.  This is largely due to the facts that: (a) S.D.N.Y. does not permit TCPA class actions, and thus hears almost no TCPA cases; and (b) federal courts in California are more familiar with California state law than are courts in other states.  This factor weighs strongly against transfer.  *See Getz*, 547 F. Supp. 2d at 1085 ("[T]he Court will assume without deciding that California substantive law would apply to Plaintiffs' product liability claim.  Thus, the Court finds that this factor weighs against transfer.  A court in the Northern District of California is more familiar with California law than a court in the District of Arizona.")

### 5. Feasibility of Consolidation with Other Claims

As suggested by Wenner, this factor is neutral, as Plaintiffs are unaware of any similar actions pending against Wenner.

### 6. Any Local Interest in the Controversy

While both potential forums have an interest in regulating corporations located within its borders, California's interest in protecting its citizens from privacy violations, from breaches of contract, from fraudulent and unfair commercial conduct, and from false advertising is significant and strongly warrants against transfer.  This fact, combined with the S.D.N.Y.'s hostility towards TCPA class actions, militate against transfer.

---

[14] Further, Wenner's contemplated, but unfiled, third-party action against its agent has no bearing on its Motion. Even if a third-party action is later filed, it has not been, and third-party proceedings are considered ancillary to the main action and therefore do not require independent satisfaction of the venue statutes. *See* 6 Wright and Miller, Federal Practice and Procedure, §1445 (3d Ed.).

P's Opposition to Def.'s Mot.
to Dismiss or Transfer Venue

No. 11-cv-04648 EMC

1

**7.  The Relative Court Congestion and Time of Trial in Each Forum**

2

This final factor also weighs against transfer  As Wenner explains, in 2010, the pendency

3

from filing of suit to trial was approximately 11 months *longer* in S.D.N.Y. than in this District,

4

while time to disposition is approximately the same.  (Dkt. 18, p. 24.)  Because Wenner has the

5

burden of clearly demonstrating the appropriateness of transfer, this factor weighs strongly against

6

transfer.

7

<u>**CONCLUSION**</u>

8

9

For the reasons stated above, Plaintiffs respectfully request that this honorable Court deny the

10

pending Motion in its entirety, and for such other and further relief as this Court deems appropriate.

11

Dated:  January 13, 2012

12

13

By: /s/ <u>Sean P. Reis                                       </u>
        Edelson McGuire LLP

14

        One of Plaintiffs' attorneys

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

1

## CERTIFICATE OF SERVICE

2

     I, Sean P. Reis, an attorney, hereby certify that on January 13, 2012, I served the

3

above and foregoing ***Plaintiff's Opposition to Defendant's Motion to Dismiss, or, in the Alternative, to Transfer to the Southern District of New York*** by causing true and accurate

4

copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF filing system on this, the 13th day of January, 2012.

5

6

                        /s/ Sean P. Reis

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28